UNITED STATED DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
MICHAEL TESSITORE,                                    Docket No.:

                                  Plaintiff,

                                                       **COMPLAINT**
         -against-

VILLAGE OF WESTHAMPTON DUNES, MAYOR                     **JURY TRIAL DEMANDED**
IRWIN R. KRASNOW, FORMER MAYOR GARY A.
VEGLIANTE, SERGEANT CONSTABLE BRIAN
HENNIG, SERGEANT CONSTABLE TIMOTHY
TURNER, FORMER OR CURRENT TRUSTEES
MICHAEL J. CRAIG, HARVEY A. GESSIN, GARY
TRIMARCHI, JOHN J. EFF, JR., HOWARD B.
FRIEDMAN and REGINA M. MULHEARN in their
individual and official capacities,

                                  Defendants.
----------------------------------------------------------------X

Plaintiff, MICHAEL TESSITORE by and through his attorneys, FAMIGHETTI &

WEINICK, P.L.L.C., complaining of Defendants herein, alleges upon knowledge as to himself

and his own actions and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.      This is an action for monetary damages and injunctive relief against Defendants,

their agents and employees, for committing acts under color of law and depriving Plaintiff of rights

secured by the Constitution and laws of the United States of America and the State of New York.

## JURISDICTION AND VENUE

2.      This is a civil rights action brought pursuant to 42 U.S.C. §§ 1983 and 1986, the

First Amendment to the United States Constitution, pursuant to Article 1 §§ 8, and 11 of the New

York State Constitution, New York State Labor Law § 740 and any other claims that can be deemed from these facts.

3.      Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343 and the aforementioned statutory and constitutional provisions.  Plaintiff further invokes the supplemental jurisdiction of this Court under 28 U.S.C. § 1367 to hear and decide claims arising under state and local law.

4.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to Plaintiff's claims occurred within this judicial district.

## PARTIES

5.      Plaintiff Michael Tessitore ("Plaintiff" or "Tessitore") was and is a citizen of the United States and resident of the State of New York, County of Suffolk.

6.      Plaintiff was and is a Constable for the Village of Westhampton Dunes.

7.      Throughout his tenure as a Village constable, Tessitore has performed his duties in an exceptional manner with the highest standards.

8.      Defendant, Village of Westhampton Dunes ("Village") was and is a municipality organized and existing under the laws of the State of New York with its principal place of business in Suffolk County, New York.

9.      Defendant Village was and is responsible for the control of its agents and employees, including but not limited to Defendants Irwin R, Krasnow, Gary A. Vegliante, Brian Hennig, Timothy Turner, Michael J. Craig, Harvey A. Gessin. Gary Trimarchi, John J, Eff, Jr. Howard B. Friedman and Regina M. Mulhearn.

10.      Defendant Irwin R. Krasnow ("Krasnow") was elected the Mayor of the Village on June 21, 2024, and began his four-year term on July 1, 2024, and acted under color of law and

under color of his authority as the mayor, officer, agent, servant, and employee of Defendant Village.

11.     Defendant Gary Vegliante ("Vegliante") is the former Mayor of the Village having served from March 1994 to June 30, 2024.  Vegliante also served as "Police Commissioner" and acted under color of law and under color of his authority as the mayor, officer, agent, servant, and employee of Defendant Village.

12.     Defendant Brian Hennig ("Hennig") is a Constable for the Village with an in-house title of Sergeant or Senior Constable, acts as Tessitore's supervisor, and acted under color of law and under color of his authority as a constable, officer, agent, servant, and employee of Defendant Village.

13.     Defendant Timothy Turner ("Turner") is a Constable for the Village with an in-house title of Sergeant or Senior Constable, acts as Tessitore's supervisor and acted under color of law and under color of his authority as a constable, officer, agent, servant, and employee of Defendant Village.

14.     Defendant Michael J. Craig ("Craig") served on the Board of Trustees as a Trustee of the Village and acted under color of law and under color of his authority as an officer, agent, servant, and employee of Defendant Village.

15.     Defendant Harvey A. Gessin ("Gessin") served on the Board of Trustees as a Trustee of the Village and acted under color of law and under color of his authority as an officer, agent, servant, and employee of Defendant Village.

16.     Defendant Gary Trimarchi ("Trimarchi") serves on the Board of Trustees as a Trustee of the Village, serves as the Police Commissioner since on or about July 1, 2024, and acted

under color of law and under color of his authority as an officer, agent, servant, and employee of Defendant Village.

17.     Defendant John J, Eff, Jr. ("Eff, Jr.") serves on the Board of Trustees as a Trustee of the Village and acted under color of law and under color of his authority as an officer, agent, servant, and employee of Defendant Village.

18.     Defendant Howard B. Friedman ("Friedman") serves on the Board of Trustees as a Trustee of the Village and acted under color of law and under color of his authority as an officer, agent, servant, and employee of Defendant Village.

19.     Defendant Regina M. Mulhearn ("Mulhearn") serves on the Board of Trustees as a Trustee of the Village and acted under color of law and under color of his authority as an officer, agent, servant, and employee of Defendant Village.

## **FACTS**

20.     The Village of Westhampton Dunes is a small beach front community founded and incorporated in November 1993.

21.     The Village is approximately two miles long and is located on a barrier island within the Town of Southampton, County of Suffolk, State of New York.

22.     Vegliante was first elected Mayor of the Village in March 1994 and was Mayor of the Village until he lost his re-election bid on June 21, 2024 to Irwin R. Krasnow, serving until June 30, 2024.

23.     Mayor Irwin R. Krasnow was sworn in as the second mayor of the Village on July 1, 2024.

24.     Residency within the Village is a requirement to be eligible to be mayor and to serve as mayor.

25.     Unlike many local villages across New York State, the Village does not maintain a police department to enforce local and state laws, due to financial constraints but maintains a Department of Constabulary in lieu of a police department.

26.     The Department of Constabulary ("Department") maintains its own headquarters separate from Village Hall.

27.     Since in or around 1994, the Village has employed constables to enforce laws and ordinances within the Village.

28.     Constables hired by the Village prior to 2015, were not required to take a competitive civil service examination, were not required to have prior policing experience and were hired or not at the discretion of the mayor.

29.     Constables employed by the Village are designated as peace officers pursuant to the NYS Criminal Procedure Law § 2.10.

30.     Constables enforce New York State laws and codes, the laws and regulations of the Village, and other local laws and regulations.

31.     In the performance of their duties, Constables employed by the Village exercise sound judgment in emergencies, are authorized to conduct investigations pertaining to alleged illegal activity, prepare written and oral reports, and perform related work as necessary.

32.     Constables employed by the Village must maintain current police status or a Basic Police Officer Certificate that is active under the NYS Division of Criminal Justice Services ("DCJS").

33.     At least one Village constable is on duty twenty-four hours a day, 365 days per year.

34.     In addition to being the Mayor of the Village, Vegliante appointed himself to serve as the Village police commissioner.

35.     The Village paid Vegliante as mayor and allotted him an additional stipend for his role as police commissioner.

36.     The police commissioner title does not exist in the Village because the Village maintains a constabulary not a police department.

37.     The police commissioner title was made up by Vegliante to justify paying himself additional compensation.

38.     In his role as police commissioner, Vegliante purportedly oversaw the Department of Constabulary and the activities therein.

39.     Constable Timothy Turner has been employed by the Village as a constable since June 1994.

40.     Constable Brian Hennig was hired by the Village as a part-time constable in May 1998, and became a full-time constable in 2002.

41.     Constable John Jacobs ("Jacobs") has been employed by the Village as a constable since July 1, 2009.

42.     In or around 2010, Vegliante appointed Turner and Hennig to the "in-house" title of "Sergeant or Senior Constables".

43.     The "Sergeant/Senior Constable" title is not a position listed by the Suffolk County Civil Service Commission.

44.     Past and current Village budgets list Hennig and Turner's job title as "Senior Constables," a term made up by Vegliante to justify paying Turner and Hennig a higher salary than Tessitore and other full-time constables.

45.     Neither Turner nor Hennig attended any formal police academy, instead piecemealing together their "peace officer certificates" while at work.

46.     Neither Hennig or Turner holds a NYS DCJS Basic Police Officer Certification, nor have they received any supervisory training for the Sergeant/Senior Constable position.

47.     Since his appointment to "Sergeant Constable", Hennig has controlled the daily operations of the Department and the implementation of Department policies.

48.     Despite having the same civil service title as the other constables, i.e., "Constable", Turner and Hennig are responsible for preparing the yearly budget for the Department and for submitting the budget proposal to the Board.

49.     Hennig and Turner are also issued Village credit cards that can be used at their discretion without any needed approvals or fiscal oversight.

50.     Prior to determining the Department's budget, Vegliante, Turner and Hennig determine the salaries for themselves and for the other constables and propose the salaries to the Board of Trustees

51.     Turner and Hennig determine how many constables work each week, create the weekly shift and vacation schedules and they approve or deny overtime for the constables.

52.     Turner and Hennig determine what equipment and supplies to order for the Department.

53.     Turner and Hennig are also permitted to interview prospective applicants for constable and have discretion to recommend the hiring of applicants to the mayor.

54.     Vegliante almost always followed these recommendations.

55.     Turner and Hennig also take turns acting as patrol sergeants, supervising the other constables, as well as acting as "Field Training Officers," although neither has any DCJS training in such activities.

56.     The Department does not have a written disciplinary policy or procedure in place but Turner and Hennig have discretion in disciplinary matters.

57.     Constable Jason Luhrs ("Luhrs") has been employed by the Village as a constable since December 1, 2011.

58.     In early 2013, Tessitore was recruited and interviewed for a full-time constable position by Turner and Hennig at Turner's personal home in Sound Beach.

59.     Tessitore has previous law enforcement experience as a police officer for the Town of Southampton and Sag Harbor Police Department, since graduating from the Suffolk County Police Department's Police Academy in 2004, Class 03-142.

60.     On March 12, 2013, Hennig hired Tessitore to a constable position, which he holds to this day.

61.     Prior to his hiring, Tessitore did not meet with the Mayor Vegliante but only first met him at his swearing in ceremony after his hiring.

62.     Since March 2013 the Village has employed five full-time constables and employs part-time constables in the summer months or on an as needed basis.

63.     In or around March 2014 Tessitore accused Hennig of being a social media commenter named "PBR" on the 27East website, due to Hennig's knowledge of former Mayor Vegliante's questionable activities.

64.     Vegliante made it known around the Village that he did not like "PBR" and wanted to find out who "PBR" was because "PBR" was critical of Vegliante and the Village on social media website.

65.     Hennig denied the accusation, but it was obvious to Tessitore and others that Hennig and "PBR" were the same person.

66.     Among other clues, Hennig had vanity license plate "PBR" on his vehicle.  Hennig turned in his "PBR" vanity plate, which Hennig turned in after the allegations arose.

67.     Hennig told Tessitore to stop the accusations or he would regret it, even to go as far as drawing his weapon and ejecting the shell int the air, then catching it, while claiming he wasn't PBR.

68.     Tessitore took this to mean that Hennig would in some way retaliate against him if Tessitore reported him to Vegliante, so Tessitore stopped making the allegations.

69.     In 2015, the Suffolk County Civil Service Commission at the request of Hennig, created and administered an open competitive examination for the position of Constable in the Village that benefitted the current constables by not requiring "police status" and a physical agility test, as is now required of newly hired constables.

70.     Tessitore and the other four constables, including "Sergeant Constable" Turner and Hennig were required to apply for the position and submit a resume to civil service to be eligible for the position.

71.     However, no test was given.

72.     Hennig, Turner, Jacobs, Luhrs and Tessitore were offered employment as constables, all five accepted the offer of employment and all five passed probation.

73.     In spring 2015, Tessitore, Turner, Hennig, Jacobs and Luhrs began their first day in the civil service position of Constable.

74.     The positions are afforded New York State civil service law Section 75 protections, which means they cannot be terminated without due process, including charges and an opportunity to be heard.

75.     For purposes of the civil service position for Constable, Tessitore, Turner, Hennig, Jacobs and Luhrs all have the same start dates and seniority, based on the hire date.

76.     Despite having the identical civil service start dates, Tessitore was paid less than the other constables.

77.     There is no promotional line for the civil service position of Constable, i.e., the "Sergeant/Senior Constable" position does not exist as a civil service title or position.

78.     In June 2015. Henig created the Westhampton Dunes Police Constable Association ("WHDPCA") and was ratified as the bargaining unit by Hennig, Turner, Jacobs, Luhrs and Tessitore.

79.     On June 11, 2015, the Public Employees Relations Board ("PERB") certified and recognized the WHDPCA as the duly certified negotiating representative for all full-time Constables employed by the Village.

80.     In or around Spring 2016, a PERB charge was filed seeking, in sum, to have Turner and Hennig removed from the WHDPCA because they were considered "managerial and/or confidential" employees.

81.     PERB determined that both Hennig and Turner's duties place them in a managerial/confidential position, so PERB removed Hennig and Turner from the WHDPCA.

82.     The union appealed this decision at Hennig and Turner's request.

83.     On September 28, 2016, a PERB hearing entitled "The Village of Westhampton Dunes Designation of Persons as Managerial or Confidential" was held before Administrative Law Judge, Elena Cacavas.

84.     In sum, the ALJ's job was to investigate and determine if PERB's previous finding which designated Hennig and Turner as "management or confidential" employees was proper, because it would otherwise prevent Hennig and Turner from being union members.

85.     Management or confidential employee formulate policy, assist directly in preparing for or conducting negotiations, administer labor agreement, or assist in a confidential capacity those employees who have employee relations responsibilities.

86.      Vegliante, Hennig and Turner conspired to testify untruthfully, and did testify untruthfully during the September 2016 PERB hearing.

87.     Specifically, they lied about Hennig and Turner performing supervisory or the management duties they perform daily.

88.     As a result of the conspiracy and false testimony, in or around November 2016, ALJ Cacavas issued a ruling finding that Hennig and Turner are not management or confidential employees and reversed PERB's previous designation permitting them both back into the union.

89.     During fall 2017 into 2018, Tessitore learned, based on his own observations, that Hennig and Turner were stealing time, i.e., they were claiming to have worked hours that they did not actually work.

90.     For example, on January 7, 2018, Turner left his shift at 4:20 pm but signed out of work at 6:00 pm.

91.     On March 8, 2018, Hennig left his shift early and did not sign out.

92.     On or about April 13, 2018, Tessitore complained to former Trustees Barry Goldfeder and Michael Craig that Hennig and Turner were falsifying time sheets and stealing time, but neither trustee took corrective action.

93.     Shortly after Tessitore's complaint, Vegliante, in his role as police commissioner changed Tessitore's shift schedule.

94.     Beginning in or around May 2018 and continuing to today, Vegliante changed Hennig and Turner's work schedule so that they were only required to work three shifts per week performing constable duties.

95.     The other two days or 16 hours per week they were permitted to perform administrative work, i.e., documenting and recording the duties of the other constables, ordering supplies, and setting the schedule and overtime use amongst other duties.

96.      Hennig and Turner use their Admin time to open overtime shifts for themselves instead of doubling up the coverage during the summer season.

97.     Thirty-two hours per week between two constables performing administrative work in a department of five constables is unnecessarily excessive.

98.     Since the implementation of Hennig and Turner's schedule, both have and continue to take advantage of the schedule by coming and leaving when they please, performing or attending to their personal affairs while on duty.

99.     Tessitore could not complain to Vegliante because he was actively helping Hennig and Turner steal time by allowing Hennig and Turner to use "Admin" time for their personal affairs.

100.   Vegliante permitted "Admin" time even after testifying under oath at the PERB hearing that Hennig and Turner did not perform administrative duties.

101.   In or around fall 2018, former Mayor Vegliante lost his residency within the Village to a foreclosure on his home.

102.   Despite losing his residency and having no other residence or home within the Village, Vegliante continued to perform his mayoral duties in violation of New York State law.

103.   In April 2019, Tessitore complained to Vegliante in his role as police commissioner that Turner was utilizing a Village vehicle for personal use while his personal vehicle was being repaired.

104.   On or about July 1, 2019, Tessitore submitted an anonymous complaint to the Public Employees Safety & Health bureau ("PESH") alleging that chemicals were being illegally stored at the Department's headquarters.

105.   An Inspector from PESH came to Department headquarters to investigate the complaint, and told Turner that Tessitore had submitted the complaint.

106.   In or around September 2019, Tessitore submitted a complaint to the Suffolk County District Attorney's office regarding the fact that Vegliante was serving as mayor of the Village in violation of the New York State law.

107.   In or about October 2019 a Village resident told Tessitore to watch his back because Vigilante believes that he had spoken out about his lack of residency within the Village.

108.   In or about December 2019 Vegliante again accused Tessitore of speaking to newspaper 27East about Vegliante lacking residency within the Village.

109.   Leading up to the June 2020 Village elections, Tessitore openly spoke out about Vegliante's lack of a residence within the Village, and that Vegliante was ineligible to run for re-election.

110.    Tessitore complained to the Board of Trustees but not one of the elected Village officials responded to Tessitore nor did they challenge Vegliante or take corrective action.

111.    The elections were delayed due to Covid 19.

112.    On September 15, 2020, the Mayoral and trustee elections took place.

113.    Despite not being a resident of the Village and thus not eligible to run for mayor, Vegliante ran and won reelection.

114.    In the few months prior to the election and up to and including October 2020, Vegliante, Hennig and Turner were actively involved in negotiating contract terms for the collective bargaining agreement ("CBA") between the Village and WHDPCA.

115.    During the contract negotiations, Vegliante, Hennig and Turner conspired to retaliate and did retaliate against Tessitore for complaining about Hennig and Turner stealing time and openly complaining about Vegliante's lack of residency within the Village to continue as mayor.

116.    For example, Vegliante, Hennig and Turner negotiated a lower salary for Tessitore as compared to the other four constables.

117.    Specifically, the first two years of the CBA, which was back dated to June 1, 2018, Tessitore would be paid $47,840.00 and Hennig and Turner were to be paid $92,768.00 or approximately $45,000.00 more per year.

118.    Constables Jacobs and Luhrs who did not speak out against Vegliante, Hennig and Turner, were rewarded with higher salaries than Tessitore.

119.    For the first two years of the CBA, Jacobs was paid $63,128.00, approximately $15,000.00 more than Tessitore and Luhrs was paid $52,416.00, approximately $5,000.00 more than Tessitore.

120.   In addition, Hennig and Turner controlled the work schedule making the work schedule favorable to themselves and the other constables.

121.   For example, Hennig and Turner permitted Jacobs to work around his other fulltime job, so they did not schedule Jacobs to work shifts that would conflict with his other job.

122.   Likewise, Hennig and Turner gave Constable Luhrs a schedule that would not conflict with his coaching and business schedule.

123.   Tessitore was not provided with any preferential treatment regarding the schedule; in fact, Hennig and Turner assigned Tessitore the most undesirable shifts and oftentimes double shifts, because Hennig and Turner fail to schedule anyone to work the shift after Tessitore's.

124.   Turner changed Tessitore's schedule with Vegliante's approval that purposely conflicted with Tessitore's other employment so that Tessitore would have to chose which job to quit.

125.   Hennig and Turner denied Tessitore equipment needed to perform his constable duties such as a new ballistic outer carrier, uniforms and essential police equipment.

126.   The retaliatory treatment continued through December 2021, in that Tessitore was still the lowest paid constable and was assigned the most undesirable shifts.

127.   In April 2022, Tessitore and other constables received AED/CPR/first aid training and received an American Red Cross certificate of completion.

128.   Despite not attending the training, Hennig received the Red Cross certificate.

129.   Tessitore complained to Vegliante, but he took no action.

130.   On June 11, 2022, Hennig signed into work at 7:00am despite coming into work at 7:30am.

131.   On June 18, 2022, Hennig signed part-time Constable Ed Witkowski into work and paid Witkowski for the day despite Witkowski not coming to work.

132.   Hennig permitted this because Witkowski gave Hennig the Red Cross certificate although Hennig did not take the training.

133.   Tessitore complained to Vegliante again, but he took no action.

134.   The retaliatory treatment continued through December 2022 in that Tessitore was still the lowest paid constable and was assigned the most undesirable shifts.

135.   Between January 2023 and June 2023 Vegliante continued to perform the Village's mayoral duties despite not meeting the residency requirement.

136.   Tessitore made it known around the Department that he wanted to see Vegliante removed from office.

137.   In June and July 2023, Hennig began to make subtle hints to Tessitore that he is too old and should retire.

138.   For example, on or about June 16 and June 23, 2023, Hennig left a retirement pamphlet on Tessitore's desk, which he took to mean Hennig believes Tessitore is too old to be a constable and wants him out of the Department.

139.   On July 14, 2023, Hennig stated to Tessitore that he "looked old and grouchy with his glasses on".

140.   Hennig does not make age-based comments to the other constables.

141.   In or around this time, Tessitore reasonably believed that Hennig illegally installed recording devices around Department headquarters so he could listen in on conversations that he is not a part of.

142.   Throughout the months of August through December 2023, Hennig and Turner continued to falsify time sheets by signing into work for hours they did not work but were paid for.

143.   For example, on September 8, 2023, Turner was on the schedule, but never came to work yet was paid for the day.

144.   On September 9, 2023, Turner was on the schedule, never came to work but was paid for the day and Hennig showed up late for his shift but was paid for the full shift.

145.   Further, Hennig and Turner would schedule themselves for unnecessary and unlimited use of overtime.

146.   Hennig and Turner have knowingly submitted falsified timecards as hourly employees defrauding the Village and the New York State Retirement System.

147.   Tessitore complained to Vegliante, but nothing was done to correct the theft of time and services.

148.   In October 2023, Tessitore became aware that Vegliante was attempting to re-establish residency within the Village at 914 Dune Road.

149.   Throughout the months of October, November, and December 2023, Vegliante would leave his personal vehicle parked at the 914 Dune Road address and set up automatic timers to turn the interior lights of the house on and off to make it look as though Vegliante was living at the residence to reestablish Village residency, when he was not living at this residence or anywhere within the Village.

150.   On December 8, 2023, Hennig signed into work for administrative time, but instead of performing Village work, Hennig took a shower and completed paperwork for his personal business.

151.    In March 2024, Tessitore submitted a written complaint to the Suffolk County District Attorney's office regarding, *inter alia,* that Vegliante was serving as mayor of the Village since at least November 2018 without a legal residence within the Village.

152.    The complaint also alleged that the Village Board of Trustees "plays a role in the Village monopoly game" and each Trustee personally benefits from their role as trustee.

153.    The March 2024 complaint also apprised the DA's office of allegations of stolen time and leave by Hennig and Turner.

154.    In April 2023, Tessitore again made it known around the Department that he did not support Vegliante for his re-election campaign as Village Mayor.

155.    Notwithstanding that the initial CBA for the WHDPCA was not due to expire until May 31, 2025, Vegliante, Hennig, Turner and Trustees Craig, Eff, Jr, Gessin, and Trimarchi met in March and April 2024 to extend the CBA through May 31, 2031.

156.    The above parties chose to extend the CBA at this time so that Hennig and Turner could continue to fleece the Village should Vegliante lose the June 2024 Village Mayoral election.

157.    The newly enacted CBA also ensured that Tessitore would continue to be the lowest paid constable despite having the same civil service start date as the other constables, and formal training as a police officer.

158.    For example, a newly hired full-time constable who started in 2024 would have a starting salary 12k less than Tessitore who has 14 years on the job, and by year 7 of the new CBA, the constable hired in 2024 would have a higher salary than Tessitore.

159.    On June 21, 2024, Vegliante was voted out of office.

160.    Irwin R. Krasnow was sworn in as Westhampton Dunes Village Mayor on July 1, 2024.

161.   To date, Krasnow has maintained the policies and practices put in place by Vegliante, which continue to affect Tessitore's pay, and his retirement pay.

162.   On July 26, 2024, Tessitore requested a light duty assignment in anticipation of his upcoming surgery to his right hand.

163.   On August 7, 2024, Tessitore requested light duty to recover from surgery on his right hand.

164.   On or about August 9, 2024, the new Police Commissioner, Trimarchi who is also a Village Trustee denied Tessitore's request for light duty.

165.   However, Turner requested and was approved for 12 weeks of light duty in June 2024 because of a fractured ankle.

166.   Tessitore's request for light duty was denied because of his many complaints as described above.

167.   Due to the treatment and abuse described above, Tessitore suffered and continues to suffer sleeplessness, headaches, anxiety and marital problems that have caused Tessitore to suffer physical ailments including stomach problems and weight loss.

## CLAIMS FOR RELIEF

## AS AND FOR A FIRST CLAIM
(First Amendment Retaliation via 42 U.S.C. § 1983)

168.   Plaintiff re-alleges and incorporates each and every allegation above as if fully set forth herein.

169.   Heffernan v. City of Paterson, 136 S. Ct. 1412 (2016) prohibits state actors from taking adverse actions against employees based on the actor's perception or belief that the employee has engaged in protected First Amendment activity.

19

170.     The Individual Defendants, while acting under color of state law, retaliated against Tessitore based on their belief or perception that Tessitore engaged in protected First Amendment by speaking out on matters of public concern, specifically that former Mayor Vegliante lacked the required residency to continue as in the position as mayor of the Village and to run for re-election in 2020 and 2024, that Hennig and Turner were stealing time and that the Trustees failed to take corrective action and let it continue unabated to now.

171.     Defendant, Village, is liable pursuant to <u>Monell v. Dep't of Social Servs.</u>, because the Village and its highest-ranking policymakers, including former Mayor Vegliante, participated in the unlawful conduct and because the constitutional violations have occurred over such a long period of time and are so widespread that they constitute Village policy

172.     As a result of the concerted, unlawful and malicious conduct of all Defendants, who were acting under color of law, Plaintiff was subjected to various adverse employment actions as described above in retaliation for his engagement in protected activities.

## AS AND FOR A SECOND CLAIM
(New York State Constitutional Violations Against the Individual Defendants)

173.     Plaintiff re-alleges and incorporates each and every allegation above as if fully set forth herein.

174.     The acts and omissions of the individual defendants as set forth above were undertaken under color of state law, ordinance, regulation, custom, or usage and operated to deprive Plaintiff of his constitutional right to due process in violation of Article I, Sections 8 and 11 of the Constitution of the State of New York.  Defendants are jointly and severally liable in their individual capacity.

## AS AND FOR A THIRD CLAIM
(New York Labor Law § 740 Violation (Whistleblower) Against the Village)

175.     Plaintiff re-alleges and incorporates each and every allegation above as if fully set forth herein.

176.     In September 2019 and March 2024, Tessitore submitted a written complaint to the Suffolk County District Attorney's Office, claiming that Defendant Vegliante lacked the required residency to continue in the position as mayor or to run for re-election for mayor.

177.     Tessitore also reported that Defendants Hennig and Turner were and continued to submit falsified payroll records and would be paid for hours that they did not work, defrauding Village taxpayers.

178.     Tessitore reasonably believed and in fact the conduct of Defendants Vegliante, Hennig and Turner does/did violate NYS laws.

179.     Tessitore was retaliated in the terms and conditions of his employment for reporting unlawful conduct, which continues to today in violation of NYLL § 740.

## AS AND FOR A FOURTH CLAIM
(Intentional Infliction of Emotional Distress Against The Individual Defendants)

180.     Plaintiff re-alleges and incorporates each and every allegation above as if fully set forth herein.

181.     Defendants including Vegliante, Hennig and Turner, by their actions described herein, exhibited extreme and outrageous conduct towards Tessitore.

182.     In undertaking the aforementioned actions, Defendants intended to cause Plaintiff severe emotional distress.

183.    The aforementioned conduct of Defendants has caused Plaintiff severe emotional distress, mental anguish and physical impairments.

184.    As a proximate cause of Defendants' acts and omissions, Plaintiff has in the past and will in the future suffer damages.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs seek a trial by jury of all issues so triable in this action.

**WHEREFORE,** Plaintiff demands judgment against Defendants, where applicable, for all compensatory, emotional, physical, and punitive damages (where applicable), lost pay, front pay, overtime pay, loss of benefits, reinstatement, injunctive relief, liquidated damages (where applicable), statutory damages, and any other damages permitted by law.  It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiff is entitled.  Plaintiff demands a trial by jury.

Dated: Melville, New York
          August 28, 2024

FAMIGHETTI & WEINICK, PLLC
 *Attorneys for Plaintiff*
25 Melville Park Road, Suite 235
Melville, N.Y. 11747
(631) 352-0050

By:     *Peter J. Famighetti*
              Peter J. Famighetti